UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN MANUEL GONZALEZ,

      Petitioner,

    v.                                         Case No. 2:26-cv-532-KCD-NPM

CHARLES PARRA, FIELD OFFICE
DIRECT. GARRETT RIPA, TODD
LYONS, SECRETARY KRISTI
NOEM,

      Respondents,

                            /

## **ORDER**

Petitioner Juan Manuel Gonzalez is a Cuban citizen subject to a final order of removal. His path to that order runs through a string of serious criminal convictions—including kidnapping, robbery, and aggravated assault. (Doc. 1 at 3-4.)[1] After completing his state prison sentence and spending more than a decade living in the community under an order of supervision, Gonzalez was recently returned to the custody of U.S. Immigration and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus under 28 U.S.C. § 2241, asking this Court to order his immediate release.

Gonzalez primarily argues that his continued detention violates the Fifth Amendment's Due Process Clause as interpreted by the Supreme Court

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 6-10.) He also adds a pair of related grievances: he challenges ICE's stated plan to execute his removal to a third country—Mexico—and he preemptively asserts that any future transfer to a detention facility outside of Florida would violate his Sixth Amendment right to counsel. (*Id.* at 6, 10-11.) The Government opposes the petition. (Doc. 6.) For the reasons detailed below, the petition is **DENIED WITHOUT PREJUDICE**.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The analysis begins, as it must, with the Government's jurisdictional challenge. The Government claims that two provisions of the Immigration and Nationality Act—8 U.S.C. §§ 1252(g) and 1252(b)(9)—preclude federal

2

jurisdiction. (Doc. 6 at 3-5.) This Court has already addressed these arguments and rejected them for the same reasons they fail today. *See Obando-Vargas v. Assistant Dir.*, No. 2:26-CV-265-KCD-NPM, 2026 WL 796804, at *1-2 (M.D. Fla. Mar. 23, 2026). Section 1252(g) forecloses judicial review of just three discrete actions by the Attorney General, and challenging the procedural mechanics of detention is not one of them. *Id.* Likewise, § 1252(b)(9) "only affects cases that involve[] review of an order of removal." *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020). Because Gonzalez is challenging his physical confinement rather than asking this Court to relitigate his underlying removal order, this statute poses no obstacle to our review. With that jurisdictional underbrush cleared away, we turn to the merits. We start with Gonzalez's central claim: that his ongoing detention violates the Due Process Clause under *Zadvydas*.

**A. Substantive Due Process**

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

3

But as the Supreme Court explained in *Zadvydas*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 659. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Gonzalez cannot satisfy the initial temporal requirement. ICE took him into custody on October 31, 2025. Because he has been detained less than six months, he remains within the window in which his detention is presumptively reasonable. *See, e.g., Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025). Seemingly recognizing this problem, his petition jumps to the burden-shifting framework, claiming

that his removal to Cuba is not likely. (Doc. 1 at 8.) This argument puts the cart before the horse. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at \*12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at \*4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

Gonzalez attempts another workaround. He argues that the six-month reasonable detention period is cumulative, starting when his supervision began back in 2009. (Doc. 1 at 9.) Using that calculus, the six-month period has long since passed.

This argument makes little sense. *Zadvydas* was aimed at the severe, physical deprivation of liberty that comes from sitting in a jail cell indefinitely. The Court "used the words 'detain' and 'custody' to refer exclusively to physical confinement and restraint." *Jennings*, 583 U.S. at 311. Against that backdrop, it is illogical to run a clock designed to prevent indefinite imprisonment while a person is out living freely in the community. "Because *Zadvydas* clearly involved *detention* of a petitioner during the presumptively reasonable period, it defies common sense to suggest that *Zadvydas* time can run while a petitioner is not in custody." *Cheng Ke Chen*

5

*v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011). The six-month clock measures actual lockup, not supervised freedom. *See Akinwale*, 287 F.3d at 1052 ("[I]n order to state a claim under *Zadvydas* the alien ... must show post-removal order *detention* in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (emphasis added).)

Gonzalez also seeks to sidestep the six-month requirement by pointing to an earlier detention, arguing that the Court should aggregate his past and present stints in ICE custody. (Doc. 10 at 5.) By combining these distinct periods of confinement, Gonzalez proffers that his total time in civil immigration detention exceeds the six-month threshold, which is sufficient to rebut the presumption of reasonableness and trigger the *Zadvydas* review.

District courts are split on whether prior time in ICE custody should be aggregated to satisfy the six-month *Zadvydas* clock. Some have firmly rejected this cumulative approach. They reason that if "detentions [are counted] in the aggregate, any subsequent period of detention, even one day, would raise constitutional concerns." *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025). Because the executive branch is tasked with great deference in effectuating removals, these courts warn that constantly adjudicating the constitutionality of every brief re-detention would improperly obstruct that statutory discretion. *Meskini v.*

6

*Att'y Gen. of U.S.*, No. 4:14-CV-42 (CDL), 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018). Under this view, *Zadvydas* does not function as a "Get Out of Jail Free Card that may be redeemed at any time just because an alien was detained too long in the past." *Id.*; *see also Flores-Reyes v. Assistant Field Off. Dir.*, No. 26-CV-20226, 2026 WL 406708, at *2 (S.D. Fla. Feb. 13, 2026).

Conversely, other courts have treated the *Zadvydas* period as cumulative. *Chen v. Holder*, No. CV 6:14-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015). This approach is driven by the constitutional imperative to prevent the government from indefinitely detaining noncitizens through a loophole of release and re-detention. *Krechmar v. Parra*, No. 2:25-CV-01095-SPC-DNF, 2025 WL 3620802, at *3 (M.D. Fla. Dec. 15, 2025). To consider only the current, isolated period of confinement—ignoring all prior custody—would allow the government to bypass *Zadvydas* through successive detentions. For these courts, aggregation is the only way to safeguard against the precise danger of indefinite detention that the Supreme Court sought to prevent. *See Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *12 (M.D. La. Feb. 6, 2026).

This Court declines to endorse a blanket rule that all prior periods of confinement automatically aggregate to satisfy the *Zadvydas* six-month clock. Such a categorical approach is practically unworkable and effectively penalizes the government for its past lawful actions. If every prior day spent

in immigration custody simply rolled over into the present calculus, the government's statutory authority to briefly re-detain a noncitizen to finalize a removal would be severely restricted, if not eliminated entirely. The six-month period established in *Zadvydas* was designed to provide the government a functional window to negotiate with foreign nations, secure travel documents, and coordinate the complex logistics of deportation. A strict aggregation rule ignores the reality that diplomatic circumstances evolve. If a foreign government that previously refused repatriation suddenly agrees to issue travel documents, the United States needs a practical opportunity to effectuate that newly viable removal. Mandating an automatic rollover of all past detention would force the immediate release of a noncitizen even when their current custody is driven by an imminent, foreseeable deportation, ultimately frustrating the core purpose of the removal statute.

Instead, the better approach is to afford the government a new six-month presumptively reasonable period for each discrete detention, unless there are facts suggesting the government is acting with an improper motive. If the record reveals a calculated pattern of catch-and-release designed merely to reset the *Zadvydas* clock or evade judicial review, aggregation may be entirely appropriate. But absent evidence of such bad faith or a deliberate strategy of looping confinement, courts should presume that a subsequent detention is a genuine, independent effort to effectuate removal. This

standard strikes the appropriate balance. It alleviates constitutional concerns regarding indefinite, cyclical detention by providing a safeguard against abuse, while simultaneously protecting the government's legitimate, statutory interest in finalizing deportations when logistical or diplomatic circumstances finally permit.

This approach finds support in both *Zadvydas*'s reasoning, and the historical foundations of the vehicle Gonzalez employs (habeas corpus). In *Zadvydas*, the Supreme Court eschewed a rigid, mechanical formula, focusing instead on whether the length of detention remains "reasonably necessary to secure removal." 533 U.S. at 699. The Court explicitly instructed lower courts to measure reasonableness in light of the specific circumstances of the case and the actual likelihood of a future deportation. *Id.* ("It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal."). That directive undermines the logic of a blind, automatic aggregation of prior custody days here. *See also Meskini*, 2018 WL 1321576, at *3.

A flexible standard also aligns with the fundamental principle that habeas corpus is "at its core, an equitable remedy." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Because habeas relief is governed by equitable principles, courts are empowered to look beyond a mere mathematical tally to examine the totality of the circumstances. *Id.*; *see also Duckworth v. Eagan*, 492 U.S.

9

195, 213 (1989) (O'Connor, J., concurring) ("[T]he Court has long recognized that habeas corpus [is] . . . governed by equitable principles[.]"). By inquiring into whether the government has engaged in a deliberate cycle of release and re-detention, the court exercises its equitable discretion to prevent gamesmanship, all while preserving the executive branch's necessary flexibility to enforce the immigration laws.

Applying this standard here, Gonzalez's argument for aggregation falls short. While he points to his prior period of ICE custody, the record is devoid of evidence that immigration officials manipulated his release and rearrest to bypass the six-month presumption or avoid judicial oversight. Without proof of such tactical maneuvering, this Court treats his present custody as an independent, good-faith endeavor to secure his deportation.

As the Supreme Court has long recognized, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. So the executive branch gets a presumptively reasonable six-month runway to do its job, negotiate with foreign governments, and execute a final removal order. *Zadvydas*, 533 U.S. at 701. Because Gonzalez remains inside that window, his current custody does not cross the line into the kind of indefinite, arbitrary lockup the Fifth Amendment forbids. Until that clock actually runs out, the Government retains the constitutional authority to hold him.

10

**B. Third-Country Removal**

Gonzalez separately protests that the Government intends to remove him to a third country—in this case, Mexico—allegedly without giving him "the opportunity to appear before any court to contest" that designation. (Doc. 1 at 6.)

The problem with this argument is straightforward: the Immigration and Nationality Act already anticipates this exact scenario. The statutory framework provides a clear administrative process for designating a country of removal, along with a built-in mechanism for a noncitizen to challenge that designation. *See* 8 U.S.C. § 1231(b). Yet, Gonzalez nowhere claims that he actually attempted to use that procedure. He does not allege that the Government ignored his invocation of the process or denied him a remedy he properly sought. A petitioner cannot simply bypass the established administrative machinery and then ask a federal court to intervene on the grounds that he was denied a chance to be heard. Because Gonzalez failed to engage the very procedures designed to address his complaint, this claim goes nowhere. *See Coker v. Austin*, 688 F. Supp. 3d 1116, 1121 (N.D. Fla. 2023) ("Federal courts cannot adjudicate hypothetical or abstract disputes, or exercise general legal oversight of the Legislative and Executive Branches.").

**C. Sixth Amendment**

11

That leaves Gonzalez's final grievance: a preemptive strike against a future facility transfer. (Doc. 1 at 10-11.) Relying on "clear and reliable information and belief," Gonzalez predicts that ICE might suddenly move him to a detention facility outside of Florida. (*Id.* at 10.) If that happens, he argues, it will sever his access to retained counsel in violation of the Sixth Amendment. To prevent this, he asks the Court for an emergency order enjoining the Government from moving him.

There are a few problems. First, "district court[s] lack[] jurisdiction to enjoin the government from transferring immigration detainees to other districts, as those decisions fall within the discretion of the Attorney General." *Marquez-Diaz v. Ripa*, No. 25-CV-23256, 2025 WL 2061675, at *3 (S.D. Fla. July 22, 2025). Second, Gonzalez seeks to remedy a harm that has not happened, and we have no way of knowing if it ever will. Federal courts do not sit to issue advisory opinions or to referee administrative housing decisions before they are made. *See Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("[A] party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury."). Finally, Gonzalez's fear that a transfer will obliterate his ability to communicate with his lawyer assumes that any new facility will completely cut off his access to legal calls, video visits, or mail. Gonzalez offers no

12

evidence that a transfer would actually bar him from participating in his immigration case, submitting necessary documents, or seeking further redress. The Court declines to grant the extraordinary remedy of injunctive relief based on a chain of what-ifs.

### III. Conclusion

Gonzalez's core due process claim under *Zadvydas* is not yet ripe, and his remaining arguments regarding third-country removal and hypothetical facility transfers fail to state a valid, justiciable claim. Accordingly, the habeas petition (Doc. 1) is **DENIED WITHOUT PREJUDICE** to Gonzalez refiling a new petition should his current detention exceed the six-month mark and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on April 23, 2026.

Kyle C. Dudek
United States District Judge

13